Robert R Parker Jr.,
Attorney for Plaintiff
111 SW Fifth Avenue
Suite 3150
Portland, Oregon 87204
503-444-3417
robert@robertparkerlawoffices.com
Pro Hac Vice Application Pending

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## GEORGIA

| | | |
|---|---|---|
| **JOHN TOLBERT** | ) | |
| | ) | **Civil Action No.:** |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| | ) | **VIOLATIONS OF 42 USC** |
| **vs.** | ) | **2000e-2(a)(1), 29 USC 623** |
| | ) | **42 USC 1981** |
| **AMERICREDIT FINANCIAL SERVICES,** | ) | |
| **INC., dba as GENERAL MOTORS** | ) | |
| **FINANCIAL, (a Delaware Corporation),** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

COMES NOW, Plaintiff JOHN TOLBERT, by and through his undersigned Counsel,

Robert R. Parker, Jr., LLB., and for his Complaint against Defendant AmeriCredit Financial

Services, Inc., dba General Motors Financial, and shows unto this Court the following:

## PARTIES:

1. Plaintiff, John Tolbert is a resident of the State of Georgia and at all relevant times

   referenced in this Complaint was a full-time managerial employee of defendant

   AmeriCredit Financial Services, Inc., dba General Motors Financial (hereinafter referred

   to as "GMF"), up until the date of constructive discharge by the improper actions of the

   agents and/or employees of defendant GMF.

2. Defendant, AmeriCredit Financial Services, Inc., dba General Motors Financial (GMF), is, upon information and belief, a corporate entity organized and existing under the laws of the State of Delaware and is otherwise authorized to do business in the State of Georgia and can be served with the Summons and Complaint in this matter by service upon defendant's registered agent of record, CSC of Cobb County, Inc., whose address is 192 Anderson St SE, Suite125, Marietta, GA 30060.

## JURISDICTION:

3. This action is premised on 42 USC 2000e-2(a)(1) and (a) (2), 28 USC 1331, 28 USC 1332, 29 USC 623, 42 USC 1981 and this Court's pendent and ancillary jurisdiction over state law-based causes of action.

## VENUE:

4. Venue is proper in this matter consistent with the terms and provisions of 28 USC 1391(b)(2) as a substantial part of the events occurred in the challenged venue .

## NATURE OF THE ACTION:

5. This is an action for relief emanating from intentional and/or negligent acts of discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 as amended, in addition to violations of 29 USC 623 and 42 USC 1981 for discrimination based on Plaintiff's race and related state law causes of action.

6. Plaintiff alleges and the evidence to be presented in this matter will show that the agents and/or employees of defendant GMF, unlawfully discriminated against the Plaintiff based on his race and age in violation of applicable federal and state laws of which defendant was fully aware of at the time of the unlawful discriminatory acts alleged herein were implemented by said agents and/or employees of defendant.

## COMMON NUCLEUS OF OPERATIVE FACT:

7. Dealer Relationship Manager Gary Glisson, whom I managed, submitted a claim to GM Financial Human Resources stating that he felt as if he was targeted/singled out on a January 18th, 2022, joint Annual 2021 Territory Review call.

8. This call included Regional Credit Manager Patrick Barber, Credit Manager Jason Daniels, Credit Buyers Tiffany Dangerfield and Jessica Echevarria and the Plaintiff.

9. At this time, the Plaintiff was responsible for managing five (5) other direct reports and the company had employed a "best practice" for approximately four (4) years without issue.

10. Plaintiff and his team would discuss what strategies worked, which ones did not work or were not the most productive to help accomplish the team and company objectives and make appropriate adjustments for the coming year.

11. For the most part, these sessions are both interactive and informative. There were also moments of levity and fun while these sessions were held with direct reports Maxim Depre, Robert Revis, Diane Alexander, Jim Banker and Scott Ferraris along with their credit teams.

12. Unfortunately, Gary Glisson and the Plaintiff had both interviewed for the Regional Manager position in 2017; the Plaintiff beat him out and Mr. Glisson appears to have been indifferent ever since.

13. The Regional Credit Manager Patrick Barber came to Plaintiff several times during 2021 and 2022 to discuss Mr. Glison's lack of production and professionalism while stating his credit team did NOT want to work with Mr. Glisson any longer. Plaintiff

noted that this was evolving into a potential implosion within the ranks of his department.

14. Plaintiff, in response to the foregoing, sent an email to GM Financial HR Manager Justin Daniels on February 2nd, 2022, to seek guidance before scheduling a meeting with Gary Glisson February 3rd, 2022.

15. Plaintiff indicated that Mr. Daniels guided him in terms of which questions to ask of Mr. Glisson as Mr. Glisson is said to have told several GMF buyers and managers that his 2021 Territory Review was a set-up and means to put someone on the spot.

16. Plaintiff and Mr. Glisson held a phone call on or about February 3rd, 2022, where they discussed the January 18th, 2022, territory call and details surrounding his feelings.  The call was amicable although it did appear as though Mr. Glisson seemed to be upset on two key questions asked during the joint call held with the Plaintiff.

17. Plaintiff and Mr. Glisson discussed the two (2) points of concern that he had in another conversation on or about February 3rd, 2022, and Mr. Glisson stated that a better response should have been given to his initial concern and indicated that more specificity should have been shared.

18. With respect to his second concern Mr. Glisson and Plaintiff agreed that his team was disconnected and more team meetings between him and his credit buyers would be needed to bridge these variances.

19. Plaintiff indicated that while he had thought the meeting went well and moved on.  Later that evening on February 3rd, 2022, Plaintiff received an email from another unit of GMF HR requesting a  Friday meeting February 4th, 2022.

20. Plaintiff, while on the call of February 4th, 2022, he and the other participants on the call spoke at length about Mr. Glisson's claim. which Plaintiff understands was video recorded by General Motors Financial HR representatives.

21. There were two (2) HR managers who posed various questions to the Plaintiff. One accused Plaintiff of getting "leaked internal information" from someone at HR because Gary's complaint was concerning the two (2) questions and/or concerns that Mr. Glisson had discussed in our previous meeting.

22. Plaintiff was then again falsely accused of having been provided internal information since Plaintiff had previously spoken with HR Manager Justin Daniels before getting their email request subsequently.

23. This struck Plaintiff as a rather hostile manner to be questioned in this capacity. The HR Manager went on to inquire if Plaintiff had "anything against" Mr. Glisson. To which Plaintiff politely responded that he did not.

24. Furthermore, Plaintiff pointed out that when Mr. Glisson's mother passed away in July 2021, Plaintiff was the only person from their office who attended his mother's funeral.

25. Plaintiff further told the HR representatives that he had nothing but love and respect for Mr. Glisson. for Gary and had given him the most support/help on the team as Mr. Glisson was the longest tenured sales rep on my team."

26. With respect to the purported leaks of information, Plaintiff repeatedly denied these accusations and stated unequivocally that "[n]o one leaked anything to me."

27. It did appear, however, that Mr. Glisson made regular complaints, but he would voice them to others such as credit personnel and other Dealer Relationship Managers on the team stating these territory reviews were a set-up.

28. Subsequent to the foregoing, the investigative unit at General Motors Financial was provided multiple emails sent to the team that depicted how Plaintiff managed and tracked trends of those who reported to him and that he was responsible for managing that was sent on or about February 5th, 2022.

29. Then on or about Wednesday March 30th, 2022, VP of Sales Paul Gravitt and HR Manager Justin Daniels called Plaintiff and abruptly fired the Plaintiff stating that "We're separating from you immediately."

30. Plaintiff was totally shocked and taken aback at this action and when he inquired what it was that Plaintiff had done wrong, Paul Gravitt stated "Conduct not conducive with the organization from the investigation."

31. From that conversation Plaintiff was informed that they would pick up the company car at 2PM and he was unceremoniously dismissed from his job that he had held for twelve (12) years for reasons that were premised on his race because Plaintiff's job performance has always been exemplary in nature having just been granted a raise in pay.

32. For example, Plaintiff was given a $10,000 competitive base pay adjustment raise October 2021 and just came off a 2021 Review given by VP of Credit Paul Gravitt which rated me a 3.5 which is deemed acceptable and good noting that a rating of 4 means that Plaintiff's performance Exceeds Expectations.

33. On several key criteria determination points, Plaintiff was rated a 3, in other instances Plaintiff was rated a 4. VP of Credit, Paul Gravitt, awarded Plaintiff a 5.81% merit raise increase that went into effect March 20th, 2022.

34. Then on March 30th, 2022, Plaintiff is unjustly and impermissibly terminated based, upon information and belief, a faulty investigation process which did not include the Plaintiff's participation.

35. At no time before the foregoing issues arose, has Plaintiff ever been the subject of a disciplinary issue by VP of Sales Paul Gravitt.

36. Plaintiff was not on any form of employment probation or any other corrective action or performance improvement plans.

37. Plaintiff had always maintained a record that was clean and unblemished. Plaintiff was not embroiled in any type of inappropriate relationship(s) at GM Financial in any other context.

38. Plaintiff communicated weekly with VP of Sales Paul Gravitt and VP of Credit Juan Peguero on all territory issues weekly if not daily sometimes.

39. Throughout his tenure, Plaintiff was never the subject of any major issues regarding his performance or that of his team that he managed other than the issues raised herein regarding Mr. Glisson.

40. It is worth noting that when Plaintiff interviewed for the Regional Sales Managers' position in 2017, VP of Sales Paul Gravitt voted for Gary Glisson to become the new Regional Manager.

41. It does appear that Mr. Gravitt and Mr. Glisson had shared a prior working relationship and while both the Plaintiff and Mr. Glisson were competing for the same position, Mr. Gravitt voted for Mr. Glisson, while the former VP of Credit, Natlie Clark, voted for the Plaintiff.

42. Given that there as a tie, an outside VP, Juan Peguaro was brought in who placed the tie breaking vote in favor of the Plaintiff. Mr. Glisson has been on what appears to have been besieged with some form of emotional cognitive dissonance ostensibly because he had been outvoted for the position by an African American.

43. Subsequent to those events, Plaintiff was subjected to numerous obstacles throughout my tenure as Regional Manager because Mr. Glisson would continually complain to his friend and confidant, Mr. Gravitt, who intentionally and purposely would undermine Plaintiff's authority as Regional Manager throughout Plaintiff's tenure.

44. For twelve (12) full years, Plaintiff provided nothing but professional expertise and guidance to those he managed, and Plaintiff's record will disclose that his performance numbers were always consistent with the targeted company objectives and/or exceeded same.

45. Plaintiff was provided with his Right to Sue Letter from the EEOC on or about July 10, 2023, and this action is being filed within the time period provided by law consistent with the Right to Sue Letter attached hereto and incorporated herein by reference as Exhibit "A".

## **VIOLATION OF 42 USC 2000e-2**

Plaintiff repeats, realleges and incorporates hisein by reference paragraphs 8 through 45 as if set forth in total and further complains of defendant as follows:

46. That the acts complained of hisein by defendants constitute unlawful discrimination against the Plaintiff with respect to his compensation, terms and conditions of employment and/or privileges of employment based on his race in violation of 42 USC 2000e-2 a (1).

47. That the acts and conduct complained of herein committed by defendant's duly authorized agents and/or employees constitute unlawful efforts to limit, segregate and/or classify Plaintiff in a way or ways that would or tend to deprive Plaintiff of employment opportunities which otherwise adversely affects Plaintiff's status as an employee because of his race in violation of 42 USC 2000e-2 a (2).

## COUNT II

## DISCRIMINATION BASED ON AGE:

Plaintiff repeats, realleges and incorporates herein by reference paragraphs 8 through 47 as if set forth in total and further complains of defendant as follows:

48. That the acts and conduct complained of herein committed by defendant's duly authorized agents and/or employees constitute an impermissible adverse employment decision perpetrated against the Plaintiff by virtue of his age in violation of 29 USC 623.

## COUNT III
## VIOLATIONS OF 42 USC 1981

Plaintiff repeats, realleges and incorporates hisein by reference paragraphs 8 through 48 as if set forth in total and further complains of defendant as follows:

49. Plaintiff is a member of a protected class being that he is African American.

50. Plaintiff was functioning in his position with defendant General Motors Financial.

51. That Plaintiff was unceremoniously terminated from his position based on his race premised on false reports by a disgruntled Caucasian employee who was assisted by other Caucasian managerial employees.

52. That Plaintiff was impermissibly subjected to unspoken and/or unwritten terms or conditions of employment what Caucasian managerial employees were not subjected thus

creating both a hostile work environment and disparate treatment in violation of 42 USC 1981 and Title VII.

**WHEREFORE,** Plaintiff prays this Court grant a judgment against the defendants herein as follows:

1. That process issue in this matter.

2. That this Court enter a judgement in favor of the Plaintiff and against the defendants herein on Count I of this Complaint in an amount not less than five million ($5,000,000) dollars;

3. That this Court enter judgment in favor of the Plaintiff and against the defendants herein on Count II in an amount not less than five million ($5,000,000,000) dollars;

4. That this Court enter judgment in favor of the Plaintiff and against the defendants herein on Count III in an amount not less than five million ($5,000,000,000) dollars;

5. That this Court grant Plaintiff attorney's fees and costs associated with the prosecution of the foregoing matter; and

6. This Court grant Plaintiff all other relief that this Court deem just and proper.

7. A Jury Trial is demanded in this matter.

\\\

Dated this 9th day of October 2023

Respectfully submitted,
**LAW OFFICE OF ROBERT R PARKER, JR., LLB, LLC**

By: /s/ Robert R Parker, Jr.

_____
Robert R. Parker, Jr., LLB
OSB #216437

111 SW Fifth Avenue
Suite 3150
Portland, Oregon 97204
503-444-3417
robert@robertparkerlawoffices.com

## VERIFICATION:

I, JOHN TOLBERT, do hereby verify that I caused the foregoing Complaint to be drafted on my behalf by Counsel and that the averments contained therein are true and correct to the best of my knowledge except as to those allegations made upon information and belief and as to those allegations, I have a valid good faith basis for said assertions.

Dated this 9th day of October 2023

_____
JOHN TOLBERT

# EXHIBIT

## "A"

## EEOC RIGHT TO SUE LETTER



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### Atlanta District Office

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Atlanta Direct Dial: (470) 531-4760
FAX (404) 562-6909/6910
Website: www.eeoc.gov

July 10, 2023

John E. Tolbert  3517 Patti Pkwy  Decatur, GA 30034

      RE:    Tolbert, E. John v. GM Financial Americredit       EEOC Charge Number:
      450-2022-03924

Dear John E. Tolbert

    After a careful and thorough review of your correspondence and the existing file material, it is not likely that further investigation would yield evidence sufficient to show that a violation of the laws that we enforce occurred. Therefore, it has been determined that no further action is warranted, and your charge will be dismissed. You will receive the dismissal notice, which describes your right to pursue this matter further by filing a lawsuit in federal court within 90 days of receiving the dismissal notice. If you fail to file a lawsuit within the statutory 90-day period, your right to sue in federal court will expire and cannot be restored by the EEOC. We hope this information is helpful and regret there is nothing further we can do in this matter.

                Sincerely,

                *Emmanuel Vega Arreola*

                Emmanuel Vega Arreola
                Federal Investigator